```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

ERIC JACKSON,                          :

              Plaintiff,               :

     - against -                       :    MEMORANDUM DECISION

CORPORATEGEAR, LLC, DAVID              :    04 Civ. 10132 (DC)
VERCHERE, and LYNNE VERCHERE,
                                       :
              Defendants.
                                       :
- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**   BAKER BOTTS L.L.P.
　　　　　　　　　  Attorneys for Plaintiff Eric Jackson
　　　　　　　　　　　　By: Thomas R. Trowbridge, III, Esq.
　　　　　　　　　  30 Rockefeller Plaza
　　　　　　　　　  New York, NY  10112-4498

　　　　　　　　　  LAW OFFICES OF KEVIN J. FARRELLY
　　　　　　　　　  Attorneys for Defendants David Verchere
　　　　　　　　　    and Lynne Verchere
　　　　　　　　　　　　By: Kevin J. Farrelly, Esq.
　　　　　　　　　  270 Madison Avenue, Suite 1500
　　　　　　　　　  New York, NY  10016

**CHIN, D.J.**

　　　In a prior lawsuit, plaintiff Eric Jackson obtained a judgment against defendant CorporateGear, LLC ("CorporateGear") for $164,126. The judgment was docketed in this Court on August 12, 2004. CorporateGear is now a bankrupt and defunct company. Jackson brings this lawsuit seeking to hold defendants David Verchere and Lynn Verchere, purportedly former co-owners of CorporateGear, liable for the judgment on the theory that they are CorporateGear's "alter ego."

　　　The Vercheres move for summary judgment dismissing the complaint on the grounds that (1) Jackson lacks standing to assert an alter ego claim and (2) the complaint fails to properly

plead an alter ego claim. The Vercheres also move, in the event the complaint is not dismissed, to compel Jackson to produce certain discovery.

For the reasons that follow, the motion for summary judgment is denied and the motion to compel discovery is granted, to the extent set forth below.

## STATEMENT OF THE CASE

In June 2000, Jackson entered into an employment agreement with CorporateGear.Com LLC ("CorporateGear.Com"). The agreement was signed by Jackson and by David Verchere. (D. Verchere Aff. Ex. D). Jackson was employed in New York City. (Id. Ex. A at ¶ 2; id. Ex. C at ¶ 2).

In November 2000, Jackson sued CorporateGear for breach of the CorporateGear.Com contract, in an action in this Court entitled Jackson v. CorporateGear, LLC, No. 00 Civ. 8880 (DC) ("Jackson I"). He also named David and Lynne Verchere as defendants, asserting a claim against them for wilful failure to pay wages, in violation of the New York Labor Law. (Id. Ex. C). The complaint alleged that David Verchere was the founder, chief executive officer, and co-owner of CorporateGear and that Lynne Verchere was the Chairman of the Board and a co-owner of CorporateGear. (Id. Ex. C at ¶¶ 4, 5). In May 2001, the claims against David and Lynne Verchere were voluntarily discontinued. (Id. Ex. E).

On October 3, 2001, CorporateGear filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the

Southern District of New York. (Id. Ex. G). Jackson was listed as a creditor. (Id. Ex. G, Sched. F at 3). The petition did not list as an asset of the estate an alter ego claim against CorporateGear's shareholders. (See id. Ex. G).

In light of the bankruptcy filing, Jackson I was stayed pending a lifting of the automatic stay or completion of the bankruptcy proceedings, and the case was placed on suspense.

On June 30, 2004, the Bankruptcy Court issued an "Order of Final Decree," which decreed that CorporateGear's estate had been "fully administered." It ordered the bankruptcy trustee discharged and closed the case. (Id. Ex. H). Jackson's claim was not paid or otherwise administered in the bankruptcy proceedings.

By order dated July 16, 2004, in light of the termination of the bankruptcy proceedings, Jackson I was reinstated to this Court's active docket. The same order directed CorporateGear to respond to outstanding interrogatories and document requests within ten days. The order warned that a default judgment would be entered if CorporateGear did not comply. CorporateGear did not comply, and on August 11, 2004, I entered a judgment in Jackson I against CorporateGear in the amount of $164,126. By memorandum endorsement dated August 13, 2004, the case was closed without prejudice to the filing of a new action against the Vercheres.

Jackson filed the instant action on December 22, 2004, asserting an "alter ego" claim against the Vercheres.

Jurisdiction was based in part on diversity of citizenship, as Jackson was then a citizen of Tennessee, CorporateGear was a New York limited liability company with its principal place of business in New York, and the Vercheres were both New York residents. (Id. Ex. A at ¶¶ 2-7).

This motion followed.

## DISCUSSION

I address first defendants' argument that Jackson lacks standing to assert an alter ego (or veil-piercing) claim; second their argument that the complaint fails to properly plead an alter ego claim; and third their alternative request to compel discovery.

**A.   Standing**

The Vercheres' standing argument proceeds as follows: (1) a company may bring an alter ego claim against its own shareholders, (2) when a company files in bankruptcy only the trustee may assert the alter ego claim on behalf of the company, (3) here the alter ego claim was not listed in CorporateGear's schedule of assets in its bankruptcy petition, (4) consequently the alter ego claim was not "abandoned" by the trustee and remains "property" of CorporateGear's estate, and (5) therefore Jackson lacks standing to assert the claim. (Def. Mem. at 5-12). I discuss first the principles of veil-piercing and the law applicable to the issue of standing to assert a veil-piercing claim. I then apply these legal principles to the facts of this case.

1.  **Applicable Law**

    a.  **Piercing the Corporate Veil**

    Although the corporate form generally must be respected, see United States v. Funds Held in Name or for Benefit of Wetterer, 210 F.3d 96, 106 (2d Cir. 2000) ("Courts must be extremely reluctant to disregard corporate form . . . ."), it will be disregarded "whenever necessary 'to prevent fraud or achieve equity.'" Walkovszky v. Carlton, 276 N.Y.S.2d 585, 587 (1966) (quoting Int'l Aircraft Trading Co. v. Mfr. Trust Co., 297 N.Y. 285 (1948)). In certain circumstances, a creditor of a corporation may sue the latter's parent or shareholders under the doctrine of piercing the corporate veil, otherwise known as alter ego liability. See generally MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 63-64 (2d Cir. 2001); In re Keene Corp., 164 B.R. 844, 851-53 (S.D.N.Y. Bankr. 1994).

    To pierce a corporate veil under New York law,[1] a plaintiff must show that: (1) the owner exercised such control over the corporation that the latter became "a mere instrumentality" of the former; (2) the owner used this control to commit a fraud or other wrong; and (3) the fraud or wrong resulted in injury to the plaintiff. In re Vebeliunas, 332 F.3d

---

[1] The parties apply New York law to the substantive issues of veil-piercing and I agree that New York law applies in this respect. CorporateGear is a New York limited liability company. See Promotions Unlimited Corp. v. RXD Pharm., Inc., No. 95 Civ. 2297 (DC), 1997 WL 527863, at *3 n.2 (S.D.N.Y. Aug. 22, 1997). In additon, Jackson was employed by CorporateGear in New York, and the other significant contacts in the case are with New York as well.

85, 91-92 (2d Cir. 2003); see also MAG Portfolio, 268 F.3d at 63. The veil-piercing inquiry is fact-specific, and factors to be considered include: observance of corporate formalities; sufficiency of capitalization; overlapping ownership and management; intermingling of personal and corporate funds; and the extent to which corporate property was used by the owner as if it were the latter's own property. In re Vebeliunas, 332 F.3d at 90 n.3; MAG Portfolio, 268 F.3d at 63. Moreover, "[w]hile complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required." Id. at 64 (quoting Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997) (internal quotations omitted)).

    **b. Standing To Pierce the Corporate Veil**

In the non-bankruptcy context, any creditor can invoke veil-piercing to collect on a corporate debt from a parent corporation or shareholder. See In re Keene, 164 B.R. at 851. In the bankruptcy context, however, the issue arises as to who has standing to assert an alter ego claim. See Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132-35 (2d Cir. 1993); St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc., 884 F.2d 688, 700-05 (2d Cir. 1989) ("Pepsico").

The issue turns, at least in the first instance, on whether a claim that a debtor is the alter ego of its controlling stockholder constitutes "property" of the bankruptcy estate

within the meaning of the Bankruptcy Code.  Kalb, Voorhis, 8 F.3d at 132; see 11 U.S.C. § 541 (defining property of the estate).  If, under governing state law, the debtor can bring an alter ego claim to pierce its own corporate veil, the claim belongs to the estate and can be asserted only by the trustee.  Kalb, Voorhis, 8 F.3d at 132; Pepsico, 884 F.2d at 700.  If the claim is a general one with "no particularized injury," the trustee is the proper person to assert the claim.  Kalb, Voorhis, 8 F.3d at 132 (quoting Pepsico, 884 F.2d at 701).  The rationale is that Congress intended to protect all creditors "by making the trustee the proper person to assert claims against the debtor.  This reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion."  Pepsico, 884 F.2d at 701.

Under New York law, a corporation may pierce its own corporate veil.  Mediators, Inc. v. Manney, No. 93 Civ. 2304 (CSH), 1996 WL 297086, at *7 (S.D.N.Y. June 4, 1996); Gosconcert v. Hillyer, 158 B.R. 24, 28-29 (S.D.N.Y. 1993).  Consequently, when New York law applies, a bankruptcy trustee has "standing to assert claims based upon piercing the corporate veil or alter ego liability, and creditors are precluded from pursuing those claims until they have been abandoned."  In re Keene, 164 B.R. at 852.  But see In re R.H.N. Realty Corp., 84 B.R. 356, 360 (S.D.N.Y. Bankr. 1988) (holding, in Chapter 7 bankruptcy case where automatic stay had been lifted, that "[a] Chapter 7 trustee simply does not have standing to bring an alter ego cause of

action on behalf of the debtor's creditors"). Certain procedural requirements apply to the "abandonment" of property of an estate by a trustee, see 11 U.S.C. § 554. and unless the court orders otherwise, property of an estate that is not "abandoned" and that is not "administered" in the case "remains property of the estate." 11 U.S.C. § 554(d).[2]

The issue remains as to whether this rule holds true once the bankruptcy proceedings are closed. In a Chapter 7 case, once the estate is fully administered, the trustee is discharged, and the case is closed, may a creditor assert an alter ego claim against the owner of the debtor corporation based on pre-petition events, even where the claim was not "abandoned" by the trustee because it was not listed in the debtor's schedule of asset? Although the law is far from clear, I conclude the answer is yes.

Several considerations come into play. First, § 350 of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a).[3] Once the bankruptcy proceedings are concluded, there no longer is an estate, and the trustee has been discharged. Accordingly, the trustee is no longer available to pursue the alter ego claim and there is no

---

[2] Under § 554(c), "scheduled" property that is not "otherwise administered" when a case is closed is deemed "abandoned to the debtor and administered." 11 U.S.C. § 554(c). Here, the alter ego claim was not listed in the schedules.

[3] Section 350 is part of Chapter 3 of the Bankruptcy Code and applies to a Chapter 7 case. See 11 U.S.C. § 103(a).

longer an estate to benefit from any such suit.[4]

Second, even where an alter ego claim was not listed in the schedule of assets and therefore is not deemed abandoned as set forth in § 554(c), as a matter of logic the claim can be deemed property of the estate only if there is an estate, i.e., only if the bankruptcy case is reopened. See 11 U.S.C. § 350(b) ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."). Until the bankruptcy case is reopened, there is no estate, there is no trustee, and there is no reason why a creditor should be precluded from pursuing an unadministered claim against the debtor corporation.

Third, in a Chapter 7 case, a corporate debtor cannot be discharged. See 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless . . . the debtor is not an individual."). As the Second Circuit has observed, "Congress deliberately excluded corporations from eligibility for discharge under Chapter 7 to avoid trafficking in corporate shells and in bankrupt partnerships." In re Goodman, 873 F.2d 598, 602 (2d Cir. 1989), overruled on other grounds, Germain v. Connecticut

---

[4] See In re Rickel & Assocs., Inc., 272 B.R. 74, 98 (S.D.N.Y. Bankr. 2002) (holding, in Chapter 11 case in context of turnover provisions of 11 U.S.C. § 542, that because the "sole recipient" of turnover is trustee as the representative of the estate, "[s]ince there is no estate and no trustee after confirmation, there can be no turnover"); cf. In re Boodrow, 126 F.3d 43, 46-47 (2d Cir. 1997) (noting that under 11 U.S.C. § 362(c)(1), stay of "an act against property of the estate" continues until property is no longer property of estate, not merely until discharge, but noting that it was not clear that the bankruptcy case had been closed, despite debtor's discharge).

Nat'l Bank, 926 F.2d 191 (2d Cir. 1991); see also 6 Collier on Bankruptcy ¶ 727.01[3] (15th ed. 2005).  Moreover, the Chapter 7 proceedings do not dissolve a corporation, and unless the corporation is dissolved under state law, the corporation continues to exist and is subject to liability.  See NLRB v. Better Bldg. Supply Corp., 837 F.2d 377, 379 (9th Cir. 1988).  Hence, if a claim against a debtor corporation was not administered in the Chapter 7 proceeding, it survives and can be pursued after the Chapter 7 case is closed.  If the underlying claim against the debtor corporation is not extinguished, there is no logical reason why a creditor should not be able to pursue an alter ego claim against an owner of the corporation.

The Second Circuit's decision in Goodman supports the conclusion that after the closing of a Chapter 7 case, a creditor is free to pursue an unadministered alter ego claim.  In Goodman, a businessman and his two companies had been held liable for certain damages under the National Labor Relations Act.  The businessman and both companies filed for bankruptcy under Chapter 7.  The businessman received a discharge and the estates of the two companies were eventually closed as the bankruptcy proceedings were concluded.  In the meantime, before the bankruptcy proceedings were closed, the businessman had started operating under a new company.

The National Labor Relations Board (the "NLRB") issued a complaint alleging that the businessman and the new company were alter egos of one of the old companies.  The businessman and

the new company argued that they were protected from alter ego liability by the businessman's Chapter 7 discharge.  The bankruptcy court agreed.  On appeal, the district court remanded, holding that the bankruptcy court had not applied the correct standard in deciding the alter ego claims.  873 F.2d at 600-01.

On further appeal, the Second Circuit held that the businessman and his new company would not be protected by the businessman's Chapter 7 discharge if they were found liable for one of the former corporations' debt.  The Second Circuit held that the businessman's discharge and the closing of the estates of the two former companies did not cancel those companies' liabilities for their labor violations.  The court held:

> Because [the former companies'] unfair labor practice liabilities were not discharged, any successor or alter ego of these corporations will become liable for those obligations.

873 F.2d at 602.  Although the standing issue was not raised in Goodman, the Second Circuit did not suggest that only the Chapter 7 trustee could pursue the alter ego claim.  Indeed, the NLRB -- not the trustee -- was pursuing the claim.[5]

---

[5]  The Vercheres rely heavily on Board of Directors of Chestnut Grove Condominium Unit Owners' Ass'n v. Resolution Trust Corp., 173 B.R. 1 (D.D.C. 1994) ("Chestnut Grove"), rev'd on other grounds, 72 F.3d 919 (D.C. Cir. 1995) (per curiam).  There, an alter ego claim was not listed in the debtor's schedule of assets and the plaintiff refused to file a proof of claim and waited until the bankruptcy case closed to press the alter ego claim, arguing that the claim was abandoned because the trustee failed to pursue it while the case was open.  173 B.R. at 2.  Noting that it was "not apparent" that the trustee was even aware of the alter ego claim, the court held that because the claim was not scheduled it was not abandoned: "The Court concludes that the alter ego claim remains an asset of the estate and was not abandoned when the case was closed."  Id. at 3.  While I do not

2. **Application**

Here, Jackson challenges the Vercheres' contention that the rule that only a bankruptcy trustee has standing to assert an alter ego claim against the debtor corporation applies here because (1) the alter ego claim against the Vercheres was not one that should have been listed in the schedules and (2) the bankruptcy case is closed in any event. I do not address the first argument, for I agree with Jackson's second argument.

The Bankruptcy Court's June 30, 2004, "Order of Final Decree" declared the estate "fully administered," and it discharged the trustee and closed the case. Hence, there no longer was an estate and there no longer was a trustee to pursue any further claims against CorporateGear or its shareholders. Jackson's claims against CorporateGear were not "administered," and CorporateGear was not "discharged." Once the automatic stay was lifted, Jackson was free to pursue his claims against CorporateGear in Jackson I, and he did so, obtaining a judgment. There was nothing to preclude him from then pursuing an alter ego claim against the Vercheres to recover on that judgment.

It is true that the trustee did not formally "abandon" the alter ego claim against the Vercheres, but unless and until

---

disagree with the Chestnut Grove court's conclusion that the claim was not "abandoned" within the meaning of the Code, for the reasons set forth above, I respectfully disagree with any suggestion that, as a general matter, a creditor is barred from pursuing an unadministered alter ego claim after a Chapter 7 bankruptcy case is closed. Notably, in reversing, the court of appeals believed the district court dismissed the action as sanctions for attorney misconduct.

the bankruptcy case is reopened, there is no estate and no trustee to pursue the claim, and thus Jackson is not barred from doing so himself.  The parties revert back to "a non-bankruptcy context," and therefore any creditor, including Jackson, can invoke piercing to try to satisfy his claim from the Vercheres' assets.  <u>In re Keene Corp.</u>, 164 B.R. 844, 851 (S.D.N.Y. Bankr. 1994).

**B.    <u>Sufficiency of Pleading</u>**

The Vercheres next argue that they are entitled to summary judgment because the complaint fails to properly allege an alter ego claim.  They may very well be correct, for the complaint alleges only in conclusory terms that "[u]pon information and belief, CorporateGear . . . is the alter ego of Defendants David Verchere and Lynne Verchere."  (D. Verchere Aff., Ex. A at ¶¶ 20, 24).  The complaint does not allege specific facts to support a finding of domination and wrongful conduct, which is necessary to pierce the corporate veil.  <u>See</u> <u>De Jesus v. Sears, Roebuck & Co.</u>, 87 F.3d 65, 70 (2d Cir. 1996).

The problem, however, is that the issue of the sufficiency of the pleading is being raised on a motion for summary judgment, when the Court considers not just the face of the complaint but also evidentiary materials beyond the complaint.  <u>See</u> 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2713 (3d ed. 1998) (comparing summary judgment motions with other pretrial motions).  The parties have not had a full opportunity for discovery, and

thus a summary judgment motion is premature.  Moreover, even if I were to grant the motion, under all the circumstances, I would give Jackson leave to replead.  Accordingly, the motion for summary judgment is denied, without prejudice to renewal after the parties have had an opportunity to conduct discovery.

**C.    Discovery**

Finally, in the alternative, the Vercheres seek an order compelling Jackson to produce discovery relating to his employment agreement with CorporateGear.Com and the judgment entered in Jackson I.  Jackson objects, arguing that the requested discovery relates only to matters that bore on Jackson I.

The Vercheres' application is granted.  Although it may be the case that the Vercheres cannot attack the judgment in Jackson I because the judgment was never appealed and has not been vacated, I need not decide the issue now.  Even if the Vercheres cannot attack the judgment, discovery relating to the agreement and the judgment still may lead to relevant evidence. The circumstances relating to the execution of the agreement and the entry of the judgment may shed light on whether CorporateGear is the alter ego of the Vercheres.  Moreover, the complaint refers specifically to the employment agreement and the judgment in the prior case.  Hence, these are fair matters for discovery.

## CONCLUSION

For the reasons set forth above, the Vercheres' motion for summary judgment is denied and their request to compel

discovery is granted. Counsel for the parties shall appear for a pretrial conference on January 13, 2006, at 10:30 a.m.

SO ORDERED.

Dated: New York, New York
December 21, 2005

_____
DENNY CHIN
United States District Judge